IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| PTI UNION, LLC, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. |
| MERCK & CO., INC. | ) **JURY TRIAL DEMANDED** |
| Defendant. | ) |

**PLAINTIFF PTI UNION, LLC'S COMPLAINT AGAINST MERCK & CO., INC.**

Plaintiff PTI Union, LLC, by and through undersigned counsel, submits this Complaint for breach of contract for indemnification, common law indemnification, and declaratory judgment against Merck & Co., Inc. ("Merck or Defendant"). This action arises from Merck's refusal to comply with PTI Union's demands for indemnification in connection with the talc-related litigation relating to Dr. Scholl's products (the "Products") including without limitation the civil action, *Geittmann v. Arkema, Inc., et al.*, Cook County, Illinois, Case No. 2024 L001848 ("the *Geittmann* suit") now pending in Cook County, Illinois and set for trial on August 12, 2025. Plaintiff further states as follows:

**PARTIES**

1. At all times relevant to this Complaint, PTI Union, LLC ("PTI Union") was a blending and bottling contractor for branded cosmetics, pharmaceuticals, and over-the-counter health and personal care product owners.

2. PTI Union is a North Carolina limited liability company with its principal place of business in Union, Missouri.

1

3. Defendant Merck was incorporated in the State of New Jersey in 1970. Merck & Co., Inc.'s corporate offices are located at 126 East Lincoln Avenue, Rahway, NJ 07065.

4. On January 1, 1997, Pharma Tech Industries, Inc. ("PTI") and Schering-Plough Healthcare Products, Inc. ("Schering-Plough"), entered into a Supply Agreement (the "Supply Agreement") pursuant to which PTI agreed to blend and bottle Dr. Scholl's products for Schering-Plough pursuant to specifications and quality control testing set forth in Exhibits to the Supply Agreement (the "Specifications"). Under the Specifications, Schering-Plough controlled all aspects of the production and sale of the Dr. Scholl's products, including the formula (which included talc), the manufacturing process, testing, packaging, labelling, marketing, advertising and distribution. On April 1, 2008, PTI sold the assets of its blending and bottling business to PTI Union, including the Supply Agreement. In 2009, Schering-Plough merged with Merck (Merck and Schering-Plough are collectively referred to hereinafter as "Merck"). Merck subsequently sold its interests in the Dr. Scholl's products to Bayer AG on October 1, 2014. From 1997 to 2017, PTI and PTI Union blended, bottled, and packaged the Products for Merck in compliance with the Supply Agreement and Specifications.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) in that there is complete diversity of citizenship among the parties and the amount in controversy is in excess of $75,000, exclusive of costs and interest.

6. PTI Union is a citizen of Georgia and Florida for purposes of determining diversity.

7. PTI Union is a limited liability company and the sole member of PTI Union is Broadview Investments, LLC. The sole members of Broadview Investments, LLC are four trusts: (a) the Revocable Living Trust of Edward T. Noland, Jr.; (b) the Edward T. Noland, Jr. Irrevocable

Gifting Trust; (c) the Laura Noland Tarrasch Revocable Trust; and (d) the Tarrasch Family Trust. Tee Noland, a citizen of the State of Georgia, is the sole trustee of the Revocable Living Trust of Edward T. Noland, Jr. William Parker Willimon is a citizen and resident of Athens, Georgia, is the sole trustee of the Edward T. Noland, Jr. Irrevocable Gifting Trust. Laura Tarrasch and Michael Tarrasch, citizens and residents of Collier County, Florida, are the trustees of the Laura Noland Tarrasch Revocable Trust, and Michael Tarrasch, a citizen and resident of Collier County, Florida, is the sole trustee of the Tarrasch Family Trust.

8. The citizenship of a trust is determined by the citizenship of the trustees. *See, e.g.*, *Evans v. Wells Fargo Bank, N.A.*, No. 15-2725-STA-cgc,2016 U.S. Dist. LEXIS 40991, at *15 (W.D. Tenn. Mar. 29, 2015) ("[I]t is well-settled that for purposes of diversity jurisdiction the citizenship of a trust is determined by the citizenship of its trustee(s)[.]"); *Alper v. Marsh, USA, Inc.*, Case No. 4:18-CV-378-CDP, 2018 WL 1726627, at *3 (E.D. Mo. Apr. 10, 2018) ("When a trust is of the traditional type—as opposed to a construct of state law simply labeled a 'trust'—the trustees are the members of the Trust for purposes of diversity citizenship.") (citation omitted); *Schubel v. Lampland*, No. 13-1426 (PAM/JSM), 2013 WL 5787881, at *1 (D. Minn. Oct. 28, 2013) ("[T]he citizenship of the trust is the citizenship of the trustee or trustees."); *U.S. Bank Nat'l Ass'n v. Polyphase Elec. Co.*, No. 10-4881 (DWF/LIB), 2011 WL 3625102, at *1 (D. Minn. Aug. 17, 2011) ("[B]ecause a trust is not an entity that can sue and be sued, . . .the trustee's citizenship is what matters for the purposes of diversity jurisdiction.") (citation omitted); *Williams v. Nat'l Credit Adjusters, LLC*, No. 4:14-CV-267-CAS, 2014 WL 5823457, at *2 (E.D. Mo. Nov. 10, 2014) (diversity jurisdiction existed in a case involving trusts where "the citizenship of the trustees . . . of the two trusts were diverse from plaintiff"); *Algiers Develop. Dist. v. Vista La., LLC*, No. 16-

16402, 2017 WL 121127, at *3 (E.D. La. Jan. 12, 2017) ("If it is a traditional trust, its citizenship is determined by the trustee's citizenship.").

9. Accordingly, PTI Union is a citizen of Florida and Georgia for purposes of assessing diversity jurisdiction, and Merck is a citizen of New Jersey for purposes of assessing diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).[1]

10. This Court has jurisdiction over PTI Union's claim for declaratory relief pursuant to 28 U.S.C. § 2201(a) because the claim presents a case of actual controversy for which PTI Union seeks a declaration of the rights and legal relations of the parties and the Court has subject matter jurisdiction based on diversity of citizenship among the parties.

11. This Court has personal jurisdiction over Merck because Merck and/or its predecessors in interest have incurred indemnification obligations to PTI Union, which conducts business in the State of Tennessee. Pursuant to Section 16.4 of the 1997 Agreement, the parties agreed to submit to the jurisdiction of the state and federal courts in Tennessee. Merck regularly sold its Dr. Scholl's® talcum powder products in the state and during the time PTI was blending and bottling for Merck, Merck had a factory in Tennessee where all of the products were shipped. As such, Merck has purposefully availed itself of the privileges and laws of the State of Tennessee.

12. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**STATEMENT OF FACTS--PARTIES AND CONTRACTUAL RELATIONSHIPS**

13. PTI Union was formed on November 13, 2007, as a Delaware limited liability company with its principal place of business in Union, Missouri. On April 1, 2008, PTI Union acquired the

---

[1] For purposes of determining personal jurisdiction in state court, PTI Union is a citizen of North Carolina and Missouri, an analysis different and distinct from determination of citizenship for federal diversity jurisdiction

4

right to operate the blending and bottling facility and business in Union, Missouri through an Asset Purchase Agreement with PTI.[2] (the "2008 Agreement").

14. From 2008 to 2017, PTI Union served as a contract manufacturer under the Supply Agreement, blending and bottling Dr. Scholl's products for Merck in full compliance with Merck's purchase orders, the Specifications and all other requirements of the Supply Agreement. Merck, on the other hand, owned and controlled the Dr Scholl's product formula (including the inclusion of talc therein); designated the suppliers of talc and other raw materials used in PTI Union's production of Dr Scholl's and specified the method and frequency of testing to verify the absence of asbestos in talc supplied by Merck's designated supplier. Merck also controlled the packaging, labelling, marketing, distribution, advertising and sale of Dr. Scholl's products.

15. Merck required that PTI Union purchase talc used in Dr. Scholl's from Luzenac and that Luzenac test the talc it supplied pursuant to a test procedure specified by Merck. Luzenac provided certificates of analysis to PTI Union certifying that each shipment of talc delivered to PTI Union for use in Dr. Scholl's was asbestos free.

16. PTI Union had, and continues to have, no reason to believe that the talc supplied for use in Dr. Scholl's contained asbestos or posed any risk of injury to users or Dr. Scholl's. Nor would any contractor of ordinary prudence have had any reason to believe the Dr Scholl's products produced by PTI Union contained any asbestos or was dangerous and likely to cause injury to users of Dr. Scholl's.

17. Beginning in or around 2023, PTI Union, together with Merck, has been named as a defendant in numerous product liability complaints in various state courts by individuals alleging injuries from use of Dr. Scholl's Powders that PTI Union blended and bottled for Merck pursuant

---

[2] Pharma Tech Industries, Inc. changed its name to Black Creek Corporation and dissolved in 2012.

5

Case 3:25-cv-00749   Document 1   Filed 07/03/25   Page 5 of 11 PageID #: 5

to the Specifications ("Product Liability Claims"). There are currently approximately 123 cases pending in which Product Liability Claims have been asserted against the Dr. Scholl's product. PTI Union expects it will continue to receive such claims in the indefinite future.

18. The individuals asserting Product Liability Claims ("Talc Claimants") seek damages for injuries allegedly caused by the talc contained in the formulas for Dr. Scholl's Powders, including talc allegedly tainted with asbestos. They allege that Merck and PTI Union were negligent in the manufacturing and test methods and amounts, formulas or ingredient selections, marketing, sale, distribution, labeling and/or advertising of Dr. Scholl's Powders.

19. Under the 2008 Agreement, PTI Union did not assume any product or other liabilities arising from or related to activities that occurred prior to the execution of the 2008 Agreement; nevertheless, Talc Claimants have pursued and are pursuing PTI Union based on alleged successor liability for personal injuries allegedly caused by the use of Dr. Scholl's products blended and bottled before PTI Union acquired the business.

20. Pursuant to Section 14.2 of the Supply Agreement, Merck agreed to indemnify and hold PTI Union, its agents and employees harmless from and against all claims, liabilities costs, damages, losses, judgment for damages or expenses (including reasonable attorneys' fees), caused by, arising out of, or resulting from [Merck's] negligent acts and/or omissions relating to the marketing, distribution, and sale of [Dr. Scholl's] Products."

21. PTI Union has incurred legal fees, costs and expenses defending itself in the Product Liability Claims.

22. PTI Union has given Merck timely notice of the Product Liability Claims and requested that Merck honor its obligations under the Agreement to indemnify and hold PTI Union harmless from and against all claims, liabilities costs, damages, losses, judgment for damages or expenses

6

(including reasonable attorneys' fees), all claims, liabilities costs, damages, or expenses (including reasonable attorneys' fees) (collectively, "Damages") arising from such claims.

23. Merck has refused to reimburse PTI Union's Damages or acknowledge its obligation to do so under the Supply Agreement and thus failed to indemnify PTI Union and hold it harmless from Damages arising from any of the Product Liability Claims. In doing so, Merck has materially breached its indemnity obligations to PTI Union, which has forced PTI Union to defend the Product Liability Claims by itself and exposed it to risk of greater Damages relating to each such Product Liability Claim.

## **COUNT I – BREACH OF CONTRACT--INDEMNIFICATION AND DEFENSE**

24. Plaintiff PTI Union adopts and incorporates the preceding paragraphs as if fully set forth herein.

25. Merck's binding promises under the contractual defense and indemnification provisions of the Agreements obligate Merck to indemnify and hold harmless PTI Union from any Damages arising from Product Liability Claims brought by the Talc Claimants.

26. Pursuant to the Agreements, Merck is solely responsible for all demands, actions, claims, losses, damages, costs, and expenses arising from the formulation, manufacturing and test methods and amounts, Specifications, labeling, packaging, distribution, sale, advertising, and marketing of Merck Dr. Scholl's products that PTI Union blended and bottled for Merck under the Agreement. Further, Merck agreed that PTI Union would have no liability for, and that Merck would indemnify, defend, and hold PTI Union harmless from, any such Damages.

27. The allegations by the Talc Claimants in their Product Liability Claims trigger the Merck's defense and indemnity obligations under the Agreements.

28. If PTI Union were to be found liable for all or part of the damages alleged in any of the Product Liability Claims brought by the Talc Claimants, PTI Union would be entitled to indemnification from Merck pursuant to the terms of the Agreements for all Damages awarded to any Talc Claimant or any other Damages PTI Union has had to pay and such other relief as this Court deems just and appropriate.

29. Merck's continued refusal to provide full indemnification to PTI Union for the Product Liability Claims brought by the Talc Claimants and to reimburse PTI Union for its Damages is a breach of its contractual indemnification obligations and has damaged and continues to damage PTI Union in an amount to be determined at trial but in excess of $75,000.

## COUNT II – IMPLIED/COMMON LAW INDEMNIFICATION

30. Plaintiff PTI Union adopts and incorporates the preceding paragraphs as if fully set forth herein.

31. Pursuant to Fed. R. Civ. P. 8(d)(2), in the event the Court finds that Merck's binding promises under the contractual defense and indemnification provisions of the Agreement do not fully obligate them to defend and indemnify PTI Union against any claims brought by the Talc Claimants, PTI Union asserts this claim for implied or common law indemnification.

32. Courts will impose an implied obligation to indemnify when the obligation is a necessary element of the parties' relationship, or when justice and fairness demand that the burden of paying for the loss be shifted to the party whose fault or responsibility is qualitatively different from the other parties.

33. Pursuant to the Agreement, Merck is solely responsible for the formulation, manufacturing and test methods and amounts, Specifications, labeling, packaging, distribution, and marketing of and relating to all the products PTI Union agreed to blend and bottle for Merck.

34. The Talc Claimants allegations allege that PTI Union knew or should have known that "its" talc-containing products that contained talc also contained asbestos, which they allege can and does cause mesothelioma and that PTI Union negligently manufactured, labeled, marketed, and distributed talc-containing products that the Talc Claimants used and/or came into contact with, and which caused Talc Claimants mesothelioma.

35. Any damages that may be assessed against PTI Union in favor of any one of the Talc Claimants, liability for which PTI Union specifically denies, are the direct and proximate result of the acts or omissions of Merck, its agents or employees. Thus, in the event the Court concludes the express indemnification obligations in the contract are insufficient to provide complete indemnification to PTI Union for all Damages it incurs as a result of the Product Liability claims, PTI Union is entitled to be indemnified by Merck for any Damages incurred in relation to defending the Product Liability Claims under common law implied indemnity.

## COUNT III – DECLARATORY JUDGMENT

36. Plaintiff PTI Union adopts and incorporates the preceding paragraphs as if fully set forth herein.

37. A genuine controversy exists between PTI Union and Merck concerning whether Merck is obligated under the Agreement to indemnify PTI Union and hold it harmless from Damages arising from Product Liability Claims, and determination of that issue is a proper subject for adjudication under 28 U.S.C. §2201(a).

38. Merck's binding promises under the contractual defense and indemnification provisions of the Agreement obligate it to defend and indemnify PTI Union against the Talc Claimants' allegations.

39. Pursuant to the Agreements, Merck is solely responsible for the formulation, manufacturing and test methods and amounts, Specifications, labeling, packaging, distribution, and marketing of and relating to all the products PTI Union agreed to blend and bottle for Merck and therefore solely liable for Damages arising from any Product Liability Claims brought by any Talc Claims, including any judgment for Damages that may be rendered in any such claims.

40. PTI Union is therefore entitled to a declaratory judgment, pursuant to 28 U.S.C. § 2201(a) that Merck is obligated under the Supply Agreement to indemnify PTI Union and hold it harmless from Damages arising from the Product Liability Claims and that PTI Union is entitled to reimbursement by Merck of all Damages incurred in connection with the Product Liability Claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff PTI Union, LLC hereby respectfully requests that the Court grant the following relief:

A. Enter a judgment in PTI Union's favor against Merck awarding damages in an amount to be determined by a jury to fully indemnify and hold PTI Union harmless for Damages related to the Product Liability Claims.

B. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201(a) declaring that Merck is obligated under the Agreement to indemnify PTI Union and hold it harmless from all Damages arising from the Product Liability Claims and that PTI Union is entitled to reimbursement from Merck for Damages incurred in connection with the Product Liability Claims.

C. Award PTI Union pre-judgment interest, post-judgment interest, and attorneys' fees as allowed by the Agreement and law.

D.  Tax the costs of this action against Merck. Direct that all issues of fact be determined by a jury pursuant to Fed. R. Civ. P. 38.

E.   Grant such other and further relief as is just and proper.

Respectfully submitted,

s/ Tim Warnock
Tim Warnock (TN 12844)
LOEB & LOEB LLP
35 Music Square East, Suite 310
Nashville, TN 37203
(615) 749-8300
(615) 749-8308 (facsimile)
twarnock@loeb.com

Keane Barger (TN 33196)
LOEB & LOEB LLP
901 New York Avenue NW
Suite 300 East
Washington, DC 20001
(202) 618-5000
(202) 618-5001 (facsimile)
kbarger@loeb.com

*Counsel for Plaintiff*